## Etter *against* Edwards.

| 4w 63
| 150 476,
| 4 W 63
| 23 SC ⁵351

When an award of arbitrators is substantially defective, it should be set aside, and not recommitted to the arbitrators.

A decision of a court setting aside an award, virtually disposes of all subsequent motions respecting the award.

The finder of lost property has no lien for expenses gratuitously incurred in taking care of it.

Lumber which had gone adrift and lodged upon an island in the Susquehanna river, is not subject to the provisions of the act of 20th March 1812: they are only applicable to taking up lumber while floating down the waters of the river.

In an action of replevin, where the property is retained by the defendant, upon bail given to the sheriff, and the plaintiff recovers, the verdict is rightly given in damages.

ERROR to the common pleas of *Dauphin* county.

On the 7th of June 1833, this action of replevin was instituted by Edwards, plaintiff below, against Etter, defendant below, to recover twenty thousand feet of white pine boards, of the value of 12 dollars per thousand, part of a larger quantity, alleged by the plaintiff to have gone adrift about the middle of May, from Northumberland, and found in possession of defendant, on an island in the Susquehanna river, claimed and possessed by defendant, a short distance below Harrisburg, on which it had temporarily lodged while floating down the river, and had been taken into custody by defendant. When demanded by the agents of plaintiff below, part had been removed to a neighbouring lumber yard, and part remained on the island, which defendant was engaged in removing. Defendant below advertised agreeably to act of assembly, and claimed to hold possession of said lumber till remunerated, by virtue of that act; and also, for services and expenses in removing a part to a place of safety. Plaintiff below refused to pay the bill exhibited on either claim, and commenced this suit to obtain possession of said lumber. To this writ sheriff returned—" Defendant claims property and bail bond."

July 2d, 1833, defendant entered a rule of reference. August 20th, report filed, finding for defendant 29 dollars 34 cents, with costs, including justice's and printer's, and defendant to deliver to plaintiff

the twenty thousand feet of lumber in his possession, or that of the sheriff. August 20th, rule to show cause why report of arbitrators shall not be set aside.

Same day, defendant moves to have the report remanded to arbitrators for amendment, if uncertain; and moved to permit the sheriff to amend his return to the replevin in this case, by making a return of "replevied."

August 29th, 1833, report of arbitrators set aside, and opinion of the court filed, that award was for both plaintiff and defendant, repugnant, and not susceptible of being enforced.

Pleas *non cepit,* property, and plaintiff has no property. Replications and issues.

Among other points on which the opinion of the court in its charge to the jury was asked by defendant's counsel, was the following, viz. "2d. The court is requested to charge the jury, that if they believe the defendant came legally into possession of the lumber claimed, and, for the purpose of securing it and preventing its deteriorating in value by lying neglected among the dirt and rubbish, removed it, in whole or in part, and cleaned off the sand and dirt, and carefully deposited it in a lumber yard, and thereby incurred expense and trouble; such expense and trouble so incurred, gave said defendant a right to retain possession of the lumber till he was remunerated, or till a reasonable tender was made; and that, until this was done, the plaintiff had no right to the possession of the said lumber."

To this the court answered, that "it is denied." To which answer defendant excepted.

The court thus charged the jury, relative to the construction of the act of assembly of 1812, concerning taking up lumber.

"There may be cases in which lumber has grounded, and if not secured, would again be afloat and adrift in a few minutes, that would fairly fall within the provisions of the act of assembly of 1812, concerning the taking up lumber floating on the Susquehanna. Whether the lumber in question was in a situation at the time defendant alleges he secured it, that it could be said to fall within the provisions of the act referred to, so as to enable defendant to seize and secure it under that act, is submitted to the jury. The act must have a reasonable application. Though lumber has been once afloat, and grounded in a place where the freshet may again set it afloat, it is not allowable, at any distance of time, and however improbable that it should again be carried adrift, that a stranger should seize it, and remove it, under the act of assembly in question.

"If this case does not fall within the act of assembly, you will decide whether the lumber belongs to plaintiff. If it does, the quantity of it, and its value, and the amount of damages to which plaintiff is entitled for its detention."

To which charge defendant excepted.

Verdict for plaintiff for 264 dollars 38 cents damages, with 6 cents costs. Judgment on verdict, *nisi.*

Same day defendant moves in arrest of judgment, and assigns for

[Etter v. Edwards.]

reason, that " the verdict is informal, and does not find all the issues submitted to the jury."

Motion overruled, and judgment on the verdict absolute.

Errors assigned.

1. The court erred in refusing to remand and re-commit the report of the arbitrators back to them for amendment, if it was uncertain or informal.

2. The court erred in setting aside the award of arbitrators, during the pendency of a motion to re-commit it for correction, wherein *default and uncertainty were alleged;* and also, while the motion was pending and undecided, in permitting the sheriff to amend his return, by making a return of " replevied."

3. The court erred in their answer to the second point submitted by defendant's counsel.

4. The charge of the court to the jury is erroneous.

5. The charge is vague, indefinite and ambiguous; calculated to mislead rather than instruct the jury.

6. The court erred in entering judgment on the verdict of the jury.

*Johnson,* for plaintiff in error, on the first error assigned, cited Snyder *v.* Hoffman, 1 *Binn.* 43 ; Christmas *v.* Thompson, 3 *Serg. &* *Rawle* 133 ; Commonwealth *v.* Maris, 4 *Serg. & Rawle* 81. That the defendant had a lien for his services and expenses: 2 *Kent's Com.* 283 ; *Sto. Bail.* 61.

The opinion of the Court was delivered by

SERGEANT, J.—The first error assigned is, that the court erred in refusing to remand and re-commit the report of the arbitrators back to them for amendment, if it was uncertain or informal.

For the purpose of correcting an informality or a clerical mistake in the award, the court has sometimes re-committed it to the arbitrators, without the consent of the parties. Eckert's Lessee *v.* Vanderen, 1 *Binn.* 43 ; Thompson *v.* Warder, 4 *Yeates* 336. But where the error of the referees is material, this cannot be done. Shaw *v.* Pearce, 4 *Binn.* 485. In the Commonwealth *v.* Maris, 4 *Serg. & Rawle* 81, two actions were submitted to the same arbitrators, and one award made in both. A motion was made to send it back to be amended, by entering a several award in each action, founded on an affidavit of one of the arbitrators that such was their intention. This court refused the motion, and set aside the award. The defect in the present instance was substantial. It does not appear, nor is it alleged, that the plaintiff gave his consent to the re-commitment: on the contrary, he moved to set aside the award. The course taken by the court, therefore, was proper.

The second error assigned is, that the court erred in setting aside the award of the arbitrators during the pendency of a motion to re-commit it for correction, where a default and uncertainty were alleged: and also, while the motion was pending and undetermined,

IV.—I

in permitting the sheriff to amend his return, by making a return of "replevied."

The plaintiff's motion, to set aside the award, was first made, and the decision of it involved the investigation of the defendant's motions, and virtually disposed of them. This error is not sustained.

That the court erred in their answer to the second point submitted by the defendant's counsel. That point was as follows: "Second. The court is requested to charge the jury, that if they believe the defendant came legally into possession of the lumber claimed, and, for the purpose of securing it, and preventing its deterioration in value by lying neglected among the dirt and rubbish, removed it in whole or in part, and cleaned off the sand and dirt, and carefully deposited it in a lumber yard, and thereby incurred expense and trouble; such expense and trouble so incurred, gave said defendant a right to retain possession of the lumber till he was remunerated, or till a reasonable tender was made; and that until this was done the plaintiff had a right to the possession of the lumber." To this the court answered, "it is denied," and the defendant excepted.

Treating the defendant as the finder of lost property, it is well settled, that he had no lien for expenses gratuitously incurred in taking care of it. In Binstead v. Buck, 2 W. Black. 1117, it was held, that the defendant had no lien on a pointer dog, which casually strayed to his house, for the expenses of his keep; and a refusal to deliver him up without the payment of these expenses, was held a conversion. This doctrine is recognised by Eyre, C. J., in delivering the opinion of the court, in Nicholson v. Chapman, 2 H. Black. 258. Whether the finder has any remedy against the owner to recover an indemnity for his expenses, seems undetermined. In the case of Nicholson v. Chapman, the point is discussed, but not decided. In Doctor and Student, c. 51, it is said, "though a man waive the possession of his goods, and saith he forsaketh them, yet, by the law of the realm, the property remaineth still in him, and he may seize them after, when he will: and if any man, in the mean time, put the goods in safeguard, for the use of the owner, I think he doth lawfully, and that he shall be allowed his reasonable expenses, as he shall be of goods found, but he shall have no property in them." In Judge Story's Treatise on Bailments 61, the question, what care and diligence a finder of goods is bound to use, is discussed, and the authorities are collected. It seems it remains yet to be authoritatively decided, what are the duties of a finder of lost property, and whether he can recover a compensation for the labour and expense he may voluntarily bestow upon it; or whether in the absence of a promise of reward, the obligation to the owner is an imperfect one, resting merely on his bounty.

It is probable, as is said by chief justice Eyre, a court of justice would go as far as it could towards enforcing the payment of reasonable expenses. See 2 H. Black. 258. In the present case it is

[Etter v. Edwards.]

clear, that the property was not lost. It had accidentally gone adrift from Northumberland, and after floating down to the neighbourhood of Harrisburg, was securely lodged, in a compact form, on the island of the defendant, where it was easy to be discovered, and was soon after discovered, on pursuit being made by the owner. It would be hard upon the raftsmen, and other owners of lumber, prepared for floating down our great rivers to market, if, when it happened to go adrift and lodge below, where it would soon be found and regained, it could be seized and disposed of as the finder might think fit, at the expense of the owner. The case of Nicholson v. Chapman, 2 *H. Black.* 254, resembles the present. A quantity of lumber placed in a dock on the bank of a navigable river, being accidently loosened, was carried away by the tide, to a considerable distance, and left at low water on a towing path. A person finding it in that situation, voluntarily conveyed it to a place of safety, beyond the reach of the tide at high water. He was held to have no lien on the lumber for the trouble or expense to which he had put himself in the carriage of it, but was liable to an action of trover, unless he delivered it up to the owner on demand, though nothing was tendered to him by the owner, by way of compensation.

The case is different where the property is still floating down the river; but the recompense is not left to the principles of the common or maritime law, but is the subject of the express enactment of our legislature: and this leads me to the fourth error assigned.

That the charge of the court to the jury is erroneous. The charge was as follows: " There may be cases in which lumber is grounded, and if not secured, would again be afloat and adrift in a few minutes, that would fairly fall within the provisions of the act of assembly of 1812, concerning the taking up lumber floating on the Susquehanna. Whether the lumber in question was in a situation at the time the defendant alleges he secured it, that it could be said to fall within the provisions of the act referred to, so as to enable the defendant to seize and secure it, is submitted to the jury. The act must have a reasonable construction. Though lumber has been once afloat and grounded in a place where the freshet may again set it afloat, it is not allowable, at any distance of time, and however improbable that it should again be carried adrift, that a stranger should seize it, and remove it under the act of assembly in question."

The provisions of the act passed the 20th of March 1812, 5 *Smith's Laws* 335, are these: Section one provides, that if logs, shingles, shinglebolts, boards, or lumber of any kind, which may have been, or may be put into the river Susquehanna, or either of its branches, or into the river Lehigh, or the waters running into said river, and which may be taken up by any person or persons *floating down the waters of said rivers,* it shall be the duty of such persons to lodge a list within thirty days, with the nearest justice, &c., with

provision for advertisement by the justice, and forfeiture if the owner does not apply within three months. Section two provides for the payment by the owner of certain sums, according to the articles, and of the costs. Section three imposes penalties for neglecting to proceed under the act. The state of the lumber falling within the provisions of the act must be such as is "floating down the waters of either of said rivers." In this situation it is in peril; exposed to be wrecked by rocks, or dispersed by the waves. The interest of the public and of the owner requires that exertion should be made to save it : the person who rescues it, is in every point of view, a salvor. He may encounter danger ; he must bestow labour and pains. He is, therefore, to be recompensed; and that recompense is fixed by the act, and a mode for securing it provided. But if the lumber, instead of being afloat, is securely lodged on the ground, beyond the reach of an ordinary flood, and capable of being pursued and recovered by the owner or his agent, there is no need of calling in a salvor. I think, therefore, the court below were right in holding, that the case was not embraced by the act.

The fifth error is without foundation.

The sixth error assigned is, in entering judgment on the verdict of the jury. The rule of law in relation to verdicts and judgments in acts of replevin, is stated by Mr Justice Duncan, in Easton *v.* Worthington, 5 *Serg. & Rawle* 131. If the plaintiff prevails, he shall have damages for the unlawful caption and detention by the defendant; if the defendant, he shall have return of the goods, and damages for taking them on the writ. When the goods have not been delivered to the plaintiff, there he recovers as well their value in damages, as damages for their detention; and this is a shorter way than to sue a *withernam* and *capias* for their return. Here the action was replevin, the return, "the defendant claims property and bail bond :" verdict for plaintiff for damages, and judgment. This was in accordance with law and practice.

Judgment affirmed.