# THE SUPREME COURT

### OF

# PENNSYLVANIA.

———

## MIDDLE DISTRICT, MAY TERM, 1846.

### HARRISBURG.

———

## MOORE *v.* SHENK.

A wagoner in charge of a team from which a horse has been forcibly taken, is a competent witness for the plaintiff, though he had been permitted to hold himself out to the world as the owner.

Evidence of forcible taking may be given in replevin, though the issue be formed exclusively on a plea of property.

The rescission of an exchange of horses on terms that each may have his own again by giving back what he has received, is complete by the act of tender; after which, a forcible recaption, though it may subject the party to an action of trespass, will not preclude him from setting up his original title in an action for the property.

A successful plaintiff in replevin recovers the whole in damages: a successful defendant alone has judgment *de retorno habendo*, and a condition in a bond given by him to return the property to the plaintiff if it should be so adjudged, is simply void.

*May* 11.—This was an action of replevin for a gray mare of the value of $100, brought by Christian Shenk, the defendant in error, who was plaintiff below, against James Moore, the plaintiff in error. Bonds were given, and the defendant held the property. The defendant pleaded property, to which the plaintiff replied property in himself, and on this issue the cause was tried.

The controversy in this case grew out of a trade or exchange of mares between Christian Shenk, the teamster of Christian Shenk, the plaintiff, and James Moore, the defendant. It appeared that on or about the 12th of August, 1841, Christian Shenk, with a team of five horses, came into the village of Georgetown, Lancaster county, and stopped his team in the street, opposite to where one of the witnesses examined in the case was engaged in loading his cart, to

B                                          13

which a gray horse was attached. He approached witness, and expressed a desire to trade a sorrel mare, then in his team, for his gray horse. Witness declined to trade, but directed him to James Moore, who was the owner of a gray mare, as a person with whom he might probably be able to carry his object into effect. Shenk went directly to Moore, who was standing by his mare in the street. A trade or exchange was shortly made between them, in and by which Shenk agreed to give his sorrel mare and $25 to boot, for the gray mare of Moore. An exchange of animals was made immediately by the parties, and Shenk paid over the boot-money to Moore. Representations, as to the soundness of the respective animals, were made by both parties. Shenk stated that the sorrel mare was sound, and would work well wherever she was hitched. Moore made a similar statement as to the gray mare. It was also mutually agreed, that if either mare did not prove sound, or work well, as she had been represented, either party might return his animal, get the other, and thus rescind the bargain. The time within which the right of re-exchanging was to terminate, was not specified. Some of the witnesses swore, that as Shenk was about leaving with his team, Moore, who had been driving the sorrel mare in a light wagon, called to him, and said that he might expect him on the Monday following. It was proved, that the sorrel mare did not work as represented. On the Monday after the trade, Moore took the sorrel mare, and in company with two of his neighbours, who were examined as witnesses, went to Christian Shenk's, the plaintiff's, house, for the purpose of returning her, with the boot-money, and of getting the gray mare again. Learning that Shenk was not at home, but had gone to Lancaster with the team, he proceeded in that direction, and met the team in charge of Christian Shenk, with whom the trade and bargain had been made. Moore told Shenk, he had brought back the sorrel mare and boot-money, that she would not work as represented, that she did not suit him, and that he wanted the gray mare again, according to the trade. Shenk refused to exchange. Moore then left, saying he would send the sheriff or constable to Shenk. After proceeding some distance in the direction of Lancaster, Moore and the persons with him turned into a lane, and rode back for the purpose of overtaking Shenk on his way home. They overtook him ascending a hill. Moore rode up to him, and asked if he still refused to give up the gray mare. Shenk said he did. Moore then stopped the team, unhitched the gray mare from her place, took off her gears, put the blind bridle on the sorrel mare, and said to Shenk, who had been opposing all the time, here is your mare, and

here, pulling out $25, is your money. Shenk refused to take either the mare or the money. Moore then let the sorrel go, and laid the money down on the bank by the wagon, and, calling the attention of Shenk to it, mounted the gray mare and rode away.

On the trial, Christian Shenk, with whom the trade had been made, was offered as a witness on the part of the plaintiff. To his admission, the counsel of the defendant objected, on the ground that he was a party interested. To sustain his objection, he called and examined three witnesses, who proved, that at the time of the trade Christian Shenk, the witness offered, represented himself as the owner of the team. The court, however, overruled the objection, admitted him to testify, and this decision constituted the first bill of exception. Christian Shenk then testified, that he was the wagoner and cousin of Christian Shenk, the plaintiff, and that he had authority from him to trade or sell any one of the wheel horses he chose. The plaintiff, in examining one of his witnesses, asked him the following question : *" Did you see on Monday, the 16th day of August, three men take a gray horse from Shenk's team ?"* The inquiry suggested by this question was objected to by the defendant, on the ground that the issue was property, and not trespass. The objection was overruled, and this formed the second bill.

The following are the material parts of the charge of his honour, Judge Hays, to the jury :—

" By the contract of sale or exchange made at Georgetown on the 12th of August, the property in the gray mare passed with the possession to the plaintiff, and the property in the sorrel passed with the possession to the defendant. It was a contract executed. And the question is, whether by the act and conduct of James Moore, in taking the gray mare by force from the team of Christian Shenk, on the 16th of August, the property of the plaintiff in her was divested, and restored to the defendant. It is true a man may take his own property wherever he finds it, provided he can do it peaceably. By the terms of the contract, if the sorrel mare did not work, as Shenk had stated she would, or was unsound, James Moore had a right to return her with the money received, and demand the gray mare. But this did not justify him in seizing her by violence ; in stopping the wagon on the public road and forcibly taking her out of the team. Suppose, on arriving at the plaintiff's house, he had found him at home and his horses in his stable, and had said to him, Mr. Shenk, I here come to return the sorrel mare and the money I received, on the exchange. This mare does not suit me ; she will not work, as it was represented she would ; I will take back the gray.

The plaintiff expresses his belief that the sorrel will work, offers to try her, and says he is unwilling to give up the gray, until it is ascertained that the other will not perform. The defendant then declares he will have her, and while the plaintiff refuses and forbids him, he goes to the stable, opens it, and, against the consent and will of the plaintiff, forcibly takes possession, and rides her away. Would this have changed the property? I am of opinion that it would not; that if the property was in Christian Shenk before, it would have continued in him still. And the effect is precisely the same of the conduct and acts of James Moore in stopping the team, and against the will and consent of Christian Shenk, the wagoner, repeatedly stating his dissent, forcibly ungearing this gray mare and taking her away. James Moore had no more right to do that, than he had to go into Christian Shenk's stable against his consent, and take her from one of the stalls. I therefore instruct you, that, in point of law, such a forcible taking by James Moore did not change the property or restore it to him; but that it remained just where it was before. If, according to the contract of the 12th of August, the property was after the delivery in Christian Shenk, the plaintiff, it remains in him, and he is entitled to recover it in this action."

To the charge of the Court, the defendant's counsel excepted. The jury found a verdict for the plaintiff, with *six* cents damages and *six* cents costs. The judgment on this verdict was a judgment awarding a return of the property; on which, a writ *de retorno habendo* was issued. To this writ the sheriff returned, *"Writ read and property demanded of the defendant, who says, he has it not; therefore it is eloigned."* The attorney of the defendant moved the court to grant a rule to show cause why the above writ should not be quashed. After argument, the court denied the motion. The learned judge, in denying the motion, delivered the following opinion:—

" The motion in this case is founded upon the supposed distinction between a verdict for the plaintiff and a verdict for the defendant, in actions of replevin, brought to try the right to personal property. The distinction is this. Where the jury find for the defendant, in a case in which the chattels have been delivered by the sheriff to the plaintiff, the verdict must give damages for the taking and detention, and the judgment award a return of the chattels; but when the chattels have been retained by the defendant, and the jury find for the plaintiff, the verdict must be of damages for the value of the chattels, and there can be no judgment for a return of them.

"The cases, under the circumstances last mentioned, do so far sus-

tain the idea of the distinction, as to sanction a verdict for the value of the property, and confer the title on the defendant; but they do not go the length of deciding, that if the verdict be for the plaintiff, without finding the value in damages, a judgment *de retorno habendo* may be rendered upon it. See 5 Serg. & Rawle, 131, 4 Watts, 68.

" When the action of replevin is resorted to for the purpose of trying the right to personal property, there is no colour of reason for the distinction. The parties ought to be regarded as standing upon equal ground and entitled to the same measure of redress, which-ever may prevail. On the determination of the issue of property, if the verdict be for the defendant, he is entitled to the property it-self; if it be for the plaintiff, why should he not have the property likewise? Either should be allowed to take the equivalent in damages, if the jury find the value. Equality of right between the parties is so consonant with the character and object of this action, (replevin in Pennsylvania,) that nothing short of positive and express decisions to the contrary would warrant the denial of a judgment for the return of the goods to the one party, if, under similar circum-stances, it would be granted to the other. In truth, the argument in support of the rule was founded on the *ita lex scripta est*, rather than any discoverable reasons of equity or policy. But see Gibbs *v.* Bart-lett, 2 Watts, 34.

" In the present case, the verdict was for the plaintiff, finding six cents damages and six cents costs; and this, it was said, must be con-sidered as finding the value of the gray mare (the property in issue) to be six cents. But the jury did not find the value, either specifically or by finding such an amount as indicated that to have been their inten-tion. The jury found for the plaintiff on the issue of property; that is to say, that the gray mare in question was the property of the plain-tiff. The judgment on this verdict was a judgment awarding a re-turn of the property; on which, the writ *de retorno habendo* was pro-perly issued. Without such a judgment, the replevin bond would be nugatory.

" I am accordingly of opinion, that the motion to quash the said writ be denied. Motion denied."

The defendant thereupon took this writ of error, and assigned here the following errors :—

" 1. The court erred in admitting Christian Shenk, as a witness, to testify; he was not competent.

" 2. The court erred in admitting the testimony contained in second bill of exceptions.

" 3. There is manifest error in the whole charge of the court to

the jury, and, particularly, in that part where the court say, "That the question is whether by the act and conduct of James Moore in taking the gray mare by force from the team of Christian Shenk, on the 16th of August, the property in him was divested, and restored to the defendant." This was not the question. The question was one of property, and not force; and all that part of the charge which states, that the forcible taking could not change the property, is erroneous. The court should have instructed the jury, that if the sorrel mare was returned according to contract and the same rescinded, then the gray mare was the property of Moore. And they erred in saying, that the property in the gray mare remained in Christian Shenk, after the rescinding of the contract by Moore.

"There is, also, error in the charge of the court, making the fraud and misrepresentation a warranty, and the whole charge is erroneous in law.

"4. The court erred, in not quashing the writ of *de retorno habendo.*"

*Fordney*, for defendant in error, cited Wilk. on Replevin, vol. 6, Law Lib. 43; Shearick *v.* Huber, 6 Bin. 5.

*Frazer*, for plaintiff in error. The question in this case in the court below, was property, and not trespass. The court therefore erred particularly in that part of their charge to the jury, where they say, "that the question is whether by the act and conduct of the defendant, James Moore, in taking the gray mare by force from the team of the plaintiff, Shenk, on the 16th of August, the property in him was divested, and restored to the defendant." This was not the question; it was one of property, and not force; and all that part of the charge which states, that the forcible taking could not change the property, is erroneous. The court should have instructed the jury, that if the sorrel mare was returned according to contract and the same rescinded, then the gray mare was the property of the plaintiff. The court also erred in saying, that the property in the gray mare remained in the plaintiff, after the contract had been rescinded by the defendant; and in making the fraud and misrepresentation a warranty. Misrepresentation, &c., vitiates contracts. He cited, 1 Story's Eq. ch. 6, sec, 200. 201, 203, 213, 214, 215; Fonb. Eq. 115, note to 115, 111, 117, 118; McLane *v.* Fullerton, 4 Yates, 522; Perkins *v.* Gray, 3 Serg. & Rawle, 331; Marsh *v.* Pier, 4 Rawle, 273, 283; McFarland *v.* Newman, 9 Watts, 55; McCabe *v.* Moorehead, 1 Watts & Serg. 513.

Again, the court below erred in not quashing the writ *de retorno*

*habendo.* Here the verdict was for the plaintiff, with six cents damages and six cents costs. In replevin, where the property is delivered to plaintiff, there the verdict is for the defendant generally; and the jury find damages for the taking and detention, and the defendant is entitled to a *retorno habendo* of the goods. But where the defendant holds the property, gives bond, and the verdict is for the plaintiff, the verdict is in damages, the measure of which is, the value of the property, and no recovery of the article itself. Fitz. N. B. 69, L. and in note C, Dublin edition of 1793; 2 Penna. Practice, 166, 167,168,176; Easton *v.* Worthington, 5 Serg. & Rawle, 130; Marsh *v.* Pier, 4 Rawle, 290; Etter *v.* Edwards, 4 Watts, 68; Chaffe *v.* Sangston, 10 Watts, 265; 1 Saund. 347, notes.

*May* 15. GIBSON, C. J.—We cannot say that the witness, Christian Shenk, was improperly received. He was no more than the plaintiff's wagoner, intrusted with the management and disposition of the team, whatever may have been understood by those who heard him speak of it as his own; and it cannot be perceived that he could be benefited or prejudiced by the event of the suit. A wagoner, in charge of a team, usually conducts himself as if he were the owner of it, and is sometimes allowed even to exchange the horses which compose it, as the witness seems, in this instance, to have been; for that he was so, may be inferred from the ratification of the bargain on which the action is founded. But it follows not that he had an interest of his own in the transaction, or any part in the ownership of the horse sought to be recovered; or that he would be liable to the plaintiff in the event of his failure to recover.

Nor is there more weight in the objection to the evidence of force in the recaption, on the ground that the issue involved a question, not of force, but of property. To determine the right of property, the whole transaction, with its circumstances, was proper for the consideration of the jury. For property taken by force, the plaintiff may waive the trespass, and maintain trover and replevin for the value; but such a waiver does not exclude evidence of circumstances inseparably connected with the transaction. Besides, damages beyond the value of the property may be given for the taking and detention, even in replevin; as is shown in Gilbert on Replevin, 59, 160.

But the direction that the property was not revested in the defendant by his demand of it and offer to restore it, because he repossessed himself of it by force, was wrong. Each party had expressly reserved a right to put an end to the bargain by giving

back what he had received under it.    When, therefore, the defend-
ant signified his determination to rescind, and tendered the animal
with the money he had received, the parties were *ipso facto* remitted
to their original rights.    The remitter was so entire that the defend-
ant could have maintained trover or replevin on the wagoner's refusal
to deliver.    Was it disturbed or prevented by any act of force sub-
sequently committed in regaining the possession pursuant to it ?    It is
true that the right of recaption cannot be pleaded in justification of
violence.    "If, for instance," says Sir William Blackstone, (3 Com. 5,)
" my horse is taken away, and I find him in a common, a faire, or a
public inn, I may *lawfully* seize him to my own use :  but I cannot
*justify* breaking open a private stable, or entering on the grounds
of a third person to take him, but must have recourse to an action
at law :" in other words, the right of recaption will not justify a col-
lateral trespass committed in the prosecution of it.    But recaption,
being founded on a title already existing, is not an act necessary to
revest the title, like an entry on land for a condition broken ; but it
is a remedy, like an action, to regain the possession by virtue of a
title complete.    If it were the former, an action could not be main-
tained without at least an attempt at recaption precedent to it.    The
defendant's original title was restored by the tender, and no principle
of the common law declares his illegal enforcement of it to be a for-
feiture of it.    Even a right of entry on land might have originally
been enforced by violence, and possession thus gained be held with
a strong hand, (2 Comm. 148 :) it is only by special provision in
the statutes of forcible entry and detainer, that a party deforced may
have a writ of restitution.    As regards chattels, the common law
principle is unchanged.    Though the defendant could not have
defended himself against an action of trespass for the force, he cer-
tainly can defend himself against an action for the property.

We might stop here, were it not proper to reassert the principle
of our own decisions on a point of practice, which was thought to
be entirely settled by them.    In replevin, at the common law, only
the defendant can have judgment *de retorno habendo*, because from
him only can the property be taken to be delivered to the opposite
party ; and even he can have it only where he has not prevented the
execution of the writ in the first instance by interposing a claim to
the property.    When the plaintiff fails, the law places the parties
exactly where they stood when suit was brought :  where he succeeds
on the issue of property, he recovers the whole in damages.    So is
the common law clearly laid down in Fitz. N. B. 159, 160 ; and that
the stat. Westm. 2, made no difference in this respect, may be seen

in Gilbert on Replevin, ch. 2, § 5. Our own statute, which is copied from the 11 G. 2, c. 19, § 2, introduced no new provision; and though inveterate use has sanctioned the practice of taking a bond from a defendant claiming property in replevin, it was held in Chaffee *v.* Sangston, 10 Watts, 265, that a condition in it to return the property to the plaintiff if it should be so adjudged, was simply void, because there can be no such judgment. To the same effect is Easton *v.* Worthington, 5 Serg. & Rawle, 130 ; Etter *v.* Edwards, 4 Watts, 63 ; Marsh *v.* Pier, 4 Rawle, 290 ; and Huston *v.* Wilson, 3 Watts, 288, by which the point has been too firmly settled to be shaken.

Judgment reversed.