# Cox, Appellants, *v.* Burdett.

*Evidence—Parol evidence—Written agreement.*

Where a writing purporting to be an agreement shows on its face the signatures in a space between two portions of the writing, it may be shown by parol evidence that the writing as a whole constituted the agreement, that all of the writing was on the paper at the time of signing, and that the signatures had been placed above part of the agreement because the place for the signatures had been arranged before such part had been added. Such evidence is not intended to contradict in any way a written agreement by parol.

*Replevin—Evidence—Question for jury.*

In an action of replevin for a portable sawmill it appeared that the mill had been leased under a contract of bailment by the plaintiffs to the defendants. In this lease it was provided that if the defendants paid to plaintiffs a certain sum named, the mill should become the property of defendants. The defendants alleged that a part of the agreement was that the plaintiffs should furnish sufficient timber to keep the mill in constant operation, and that plaintiffs had violated this agreement. They also alleged that after this default plaintiffs admitted that they had violated the terms of their agreement, and told defendants to take the mill and do the best they could with it. This was denied by plaintiffs. A letter was offered in evidence written by plaintiffs to defendants in which they spoke of the mill as " your mill." *Held* (1) that the letter offered in evidence was properly admitted; (2) that the case was for the jury as to whether the original agreement of bailment had been canceled, and the mill delivered to defendants in pursuance of that cancelation; (3) that a verdict and judgment for defendants should be sustained.

*Replevin—Measure of damages—Modification of judgment—Appeals.*

In an action of replevin where the defendants retains the property the measure of damages is ordinarily the value of the property and damages for the detention which is usually the interest on the value from the time of taking ; but when the taking or detention, or both are attended with circumstances of aggravation, the party is entitled to his full measure of redress in the action of replevin.

Where the defendant in replevin succeeds and has judgment in his favor, for a return, the general rule is that he is also entitled to damages; and the decrease in value of the goods since the time of the replevin, with interest on their entire value, forms proper measure of damages. So the defendant is entitled to damages for deterioration in the value of the goods from the time of the replevin, although it be not pretended that the decrease in value is attributable in any degree to the act or default of the plaintiff.

On an appeal from a verdict for defendants in replevin where the jury has improperly allowed exemplary damages instead of merely compensatory damages, and the difference is susceptible of mathematical calculation, the appellate court will, in accordance with the desire of the appellee, reduce the judgment to the amount for which the verdict should have been given, and with such modification affirm it.

Argued May 12, 1903. Appeal, No. 70, April T., 1903, by plaintiffs, from judgment of C. P. Mercer Co., April T., 1900, No. 50, on verdict of defendants in case of W. H. Cox and J. D. Cox v. W. S. Burdett, John E. Burdett, Clarence Hayes and Frank L. Burdett. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. D. PORTER, MORRISON and HENDERSON, JJ. Judgment modified and affirmed.

Replevin for a portable sawmill. Before MILLER, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for defendants for $348.50. Plaintiffs appealed.

*Errors assigned* were (1–6) various rulings on evidence referred to in the opinion of the Superior Court; (7–15) various instructions, among them refusal of binding instructions for plaintiff.

*J. Norman Martin,* with him *W. J. Whieldon,* for appellants.— The contract was a bailment, and as defendants never complied with the conditions of the contract, under which alone they could have acquired title, the matter remained throughout as it began, a bailment: Edwards's Appeal, 105 Pa. 103; Enlow v. Klein, 79 Pa. 488.

In replevin no set-off is allowable, either under the English statutes or our own more ancient act of assembly: Fairman v. Fluck, 5 Watts, 516; Peterson v. Haight, 3 Wh. 150; Phillips v. Monges, 4 Wh. 228.

There had been no execution of the contract for sale, the rental had not been paid, and the title remained in the bailors: Potter v. Stetson & Co., 11 Pa. Superior Ct. 627.

Defendant did not allege fraud, accident or mistake as a reason for reading the writing below the signatures into the contract. A mistake of law could not help them, and writing a memorandum below the signatures was of no more avail on the contract than an indorsement on a deed could be on the question of title.

*Q. A. Gordon*, with him *J. G. White*, for appellees.—The question as to whether a contract is in writing or in parol, as far as determining whether it is to be construed by the court or the jury, depends not upon its being signed by the contracting parties, but upon whether it had been reduced to writing or is simply verbal: French Creek Twp. v. Moore, 165 Pa. 229.

If there is any reason why the amount of the damages found by the jury cannot be sustained this court probably has power to correct the verdict in this particular without a general reversal of the judgment: Easton v. Worthington, 5 S. & R. 130. If this court has any power to review the action of the court below on the matter of entering judgment on the verdict, it can make any order that the court below might lawfully have made.

OPINION BY BEAVER, J., October 5, 1903:

Replevin was brought in the court below to enforce a contract of bailment in writing, under which the plaintiffs leased to the defendants a portable sawmill and fixtures which were to be delivered to the defendants as their own property, upon the payment of the sum of $900 as in the said agreement provided. It is not denied by the defendants that the original contract was a bailment. They allege, however, that part of the contract was an agreement on the part of the plaintiffs to " furnish sufficient timber to keep the mill in constant operation and . . . . not to permit the mill to remain idle for more than twenty days at a time," and that this was written at the time the original agreement was made, before signing, and assented to by all the parties, but that the signatures were placed above this part of the agreement, because the

place for the signatures had been arranged before it was added. The defendants also allege that subsequently, after default in furnishing timber for the mill, in accordance with this contract, they had an interview with one of the plaintiffs, in which, after visiting the scrivener and examining the contract, he admitted that he had violated the terms of the agreement and told them to take the mill and do the best they could with it. There was a difference in the recollection of the witnesses as to what passed in the conversation between them after the examination of the agreement. The difference between them was radical and could only be determined by a jury in passing upon the credibility of the parties respectively.

Two questions of fact, therefore, were very prominent in the case. Was the addition or supplement, made as alleged by the defendants at the time the original was executed, a part of the agreement? and, if so, was the abrogation of the agreement, in the subsequent arrangement between the parties, actually made, as claimed by the defendants? These facts were fairly submitted to the jury and, both of them having been found in favor of the defendants, it is easy to dispose of all of the assignments of error.

The plaintiffs misconceive the object of the defendants in offering the written addition to the agreement. It was not an offer to contradict or change in any way a written agreement by parol. It was simply an effort to prove that the addition was part of the original agreement and, notwithstanding the fact that the signatures were above it, that it was as much a part of the agreement as though it was above the signatures. It did not, therefore, come under the rule which prevails in an effort to change or modify a written agreement by parol, except, perhaps, as to the quantity and quality of the proof required to establish the fact of the addition. Neither fraud nor accident was alleged but, if the defendants were to be believed, there was a mistake in having the signatures put above the addition instead of below it, a mistake into which the scrivener fell and in which all the parties to the agreement joined by his direction. There was no error on the part of the court in admitting the testimony relating to this part of the written agreement or in the instructions as to the questions which grew out of it. In view of this part of the contract, it

was entirely competent for the defendants to show that it had not been complied with and that, in consequence of the non-compliance of the plaintiffs, the subsequent arrangement, by which the mill was delivered to them, was made.

The letter, the admission of which is complained of in the fourth assignment of error, was admissible, if for no other purpose, as tending to show that the defendants' contention in regard to the arrangement by which the mill had been turned over to them, as their own property, by the plaintiff, was true, inasmuch as in that letter it is spoken of as " your mill."

We think, therefore, that the testimony, as to the admission of which error is alleged in the first six assignments of error, was all properly admitted.

We can find nothing erroneous in the charge of the court, of which the plaintiffs have any right to complain. In the general summing up of the court, as assigned for error in the eleventh assignment, the trial judge said : " There are four points in this case. What is the contract? Is it that portion of the writing which is wholly above the signatures or is it all of the writing, that above and that below the signatures ? That is the first point. Second. Was there a default on the part of the plaintiff in supplying timber and did that default continue from about August 10, to the latter part of December or January 1, 1896 ? If there was a default, then, third, did that throw the defendants idle and could they, if lumber had been furnished them, so that they could have run their mill constantly or nearly so, under the terms of the contract, have earned sufficient money from August to December to have paid the balance of two hundred and forty dollars on the contract? If you find all of those facts in favor of the defendant, then the defendant would be entitled to a verdict, up to that point. If you do not find these facts in favor of the defendants, they would not be entitled to a verdict. In the fourth place, what was the contract that was made in October, 1899, on this tract of timber in Lawrence county ? If it was as the defendants say, it would not change their status from what it was in December, 1896 ; but, if it was as the plaintiff says, it would, and the defendants would be required to saw out sufficient timber which at one dollar per thousand feet would have realized the two hundred and forty some odd dollars then owing. As you find these

facts, you will find for the plaintiff or the defendant." This did the plaintiffs no harm. The defendants could have complained of it, if the verdict had been the other way, as leaving out one of the principal points in the case, namely, was the original agreement of bailment, after the plaintiffs' failure to supply timber for sawing, canceled, as testified to by the defendants, and was the mill delivered to them in pursuance of that cancelation? As the verdict was rendered, this, of course, makes but little practical difference now. The plaintiffs seem to ignore entirely this phase of the case and hence the assignments of error to the refusal of the court to answer their points, as complained of. That question of fact was one of the prominent features of the case and could not be ignored and, in view of it, it would have been error for the court to say, as the plaintiffs requested the trial judge to say, that the title was in the plaintiff.

We are not disposed to find fault with the verdict, except as to the amount. Both in the admission of evidence and in the charge of the court, we think the court held the rule as to damages rather strictly against the defendants. Whilst it is true that there is no set-off in replevin, it is, nevertheless, true that the conduct of the plaintiff, if it be oppressive or has in it the elements of hardship, vexation or outrage, may be taken into account by the jury in fixing the amount of damages. The court held that exemplary damages could not be awarded, unless the replevin was sued out fraudulently and without color of right. This is hardly in accord with the general rule recognized by our Supreme Court. In McDonald v. Scaife, 11 Pa. 381, Mr. Justice ROGERS says : " In an action of replevin, where the defendant retains the property, the measure of damages is ordinarily the value of the property and damages for the detention, which is usually the interest on the value from the time of taking: Wilkinson on Replevin, 6 Law Library, 31 ; Hosack v. Weaver, 1 Yeates, 478 ; Easton v. Worthington, 5 S. & R. 130 ; Etter v. Edwards, 4 Watts, 63 ; Moore v. Shenk, 3 Pa. 13. But, though this is the general, yet it is not the universal rule, for circumstances may attend the taking and detention which will justify the jury in giving exemplary damages. The exceptions are as well settled as the rule itself. Thus, when the

taking or detention, or both, are attended with circumstances of aggravation, the party is entitled in some form, as is conceded, to more than compensatory damages and why should he not have his full measure of redress in the action of replevin, without compelling him to resort to an action to repossess himself of his goods unlawfully taken and to another for his damages? Multiplicity of actions is always avoided, if possible. In moulding the action of replevin, the courts have endeavored to give the remedy such a shape as to afford the injured party essential redress. For this reason they have not confined the remedy to compensatory damages but have, under peculiar circumstances of outrage and wrong, extended them far beyond these limits. And this is plain on authority. Thus in Dennis v. Barber, 6 S. & R. 420, the court says, the value of the property is usually the measure of damages, although the jury are justifiable in going further wherever there has been an outrage in the taking or vexation and oppression in the detention." See also Herdic v. Young, 55 Pa. 176.

The court also excluded evidence offered by the defendant to show that part of the property had been eloined after the replevin had been issued. This evidence we think was admissible for the purpose of showing that the value of the property had been decreased, after it had been delivered to the plaintiff. The defendant in replevin, if successful, where the property had been delivered to the plaintiff, is entitled to have the property returned and should have it in the same condition as when replevied. If there has been deterioration as to amount or quality, the plaintiff should make it good. There is reason, therefore, as well as authority for the general rule, as stated in Sedgwick's Measure of Damages, 4th edition 583 : " Where the defendant succeeds and has judgment in his favor, for a return, the general rule is that he is also entitled to damages ; and the decrease in value of the goods since the time of the replevin, with interest on their entire value, forms proper measure of his damages. So the defendant is entitled to damages for deterioration in the value of the goods from the time of the replevin, although it be not pretended that the decrease in value is attributable in any degree to the act or default of the plaintiff."

The court, however, properly laid down the general rule as

to the measure of damages for the taking and illegal retention of the property replevied; and inasmuch as there was no evidence before the jury as to oppression, vexation or outrage in the taking, their verdict should have been in accordance with the instructions of the court. And inasmuch as it is the evident desire of the appellee that the judgment be modified so as to conform to what the verdict of the jury should have been, rather than to have a reversal, and that is susceptible of mathematical calculation, we will modify the judgment accordingly. It is therefore ordered that the judgment in the court below be modified and changed so as to read $112.80, instead of for the amount of the verdict which was $348.50. And, with this modification, the judgment is affirmed.