401 A.2d 765

**GOVERNMENT EMPLOYEES INSURANCE COMPANY, Appellant,**

v.

**Leonard LANE and Sydria Lane.**

Superior Court of Pennsylvania.

Argued March 29, 1978.

Decided April 6, 1979.

616

William L. Kovacs, Philadelphia, for appellant.

Jerome H. Ellis, Philadelphia, for appellees.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

HESTER, Judge:

This is an appeal from the lower court's June 8, 1976 Order[1] denying Appellant's Petition to Confirm an Arbitrators' Award dated October 23, 1975 and remanding the award to the Arbitrators for correction so as to actually reflect their findings and decision of October 23, 1975.

The facts are as follows: Appellees (Lanes) filed an uninsured motorists claim in accordance with the provisions of the "Protection Against Uninsured Motorist" section of their automobile liability policy which had been issued by Appellant (GEICO). On August 20, 1975 and, in compliance with the appropriate policy provisions, a hearing was convened before an American Arbitration Association panel of three, all of whom were attorneys.

---

1. The June 8, 1976 Court Order provides in full:

AND NOW, TO–WIT, this 8th day of June, 1976, after hearing and consideration of the record in the herein matter, it appears there was error in the preparation, issuance, execution and transmission of the arbitrators' award. Accordingly it is hereby ORDERED AND DECREED that the Petition to confirm the award of the arbitrators in favor of Leonard Lane and Sydria Lane v. Government Employees Insurance Company in the amount of $20,000 is denied. It is further ORDERED AND DECREED that the matter involved herein is remanded back to the panel of arbitrators to correct the award so that it will reflect their findings and decision as of the 23rd day of October, 1975. BY THE COURT—/s/ Gelfand, C., J.

On October 23, 1975, the Arbitrators entered an award in favor of the Lanes which provided in relevant part:

Government Employees Insurance Company shall pay to Leonard Lane and Sydria Lane, the sum of Twenty Thousand ($20,000.00) Dollars.

Several days following the issuance of the Award, Arbitrator Simone received a telephone call from Appellees' counsel who inquired as to the intentions of the Arbitration Board in the issuance of said Award (R. 71a-72a, 77a-78a).

As a result of his conversation with Appellees' counsel, Arbitrator Simone, on October 28, 1975, wrote a letter to the American Arbitration Association advising them that "there is an error in the 'Award of Arbitrators' . . . and the 'Award' should be amended" to Twenty Thousand Dollars ($20,000.00) for each of the Appellees, for a total Award of Forty Thousand Dollars ($40,000.00). (Exhibit R-8, R. 148a).

Thereafter, on November 21, 1975, Appellant (GEICO) filed a Petition to Confirm the Award (The $20,000 Award) and have same reduced to judgment; which Petition to Confirm was opposed by Appellees contending that the intended award was $20,000 for Leonard Lane *and* $20,000 for Sydria Lane, or a total of Forty Thousand ($40,000) Dollars.

On February 11, 1976, GEICO'S Petition to Confirm was argued and on March 2, 1976, the lower court directed that the Arbitrators' Depositions be taken to determine whether there was error or ambiguity in the Arbitrators' Award.

Subsequently, on March 16, 1976, all three Arbitrators (and one of the Arbitrator's associates) were deposed and additional exhibits submitted. Also deposed was an employee of the American Arbitration Association (AAA) and the Regional Director of the Philadelphia office of the AAA.

After a review of the record, the lower court entered its June 8, 1976 Order wherein the court found that "there was, indeed, an error or ambiguity in the preparation, issuance, execution and transmittal of the Arbitrators' Award." Thus, GEICO'S Petition to Confirm Award was denied and

the matter remanded to the original panel of Arbitrators to correct the award so as to accurately reflect their findings and decision of October 23, 1975.

Thereafter, under date of June 25, 1976, the Board of Arbitrators filed its "*Corrected* Award of Arbitrators" (emphasis added) which provided in relevant part:

1. GOVERNMENT EMPLOYEES INSURANCE COMPANY shall pay to LEONARD LANE the sum of TWENTY THOUSAND DOLLARS ($20,000.00).

2. GOVERNMENT EMPLOYEES INSURANCE COMPANY shall pay to SYDRIA LANE the sum of TWENTY THOUSAND DOLLARS ($20,000.00).

It is from the June 8, 1976 remand order that GEICO has appealed raising the interesting issue of whether or not and, under what circumstances, the Court of Common Pleas had jurisdiction and authority to remand an Arbitrators' Award to be corrected when the Court concludes that there has been an error or ambiguity in the preparation, issuance, execution, and/or transmittal of the original award.

Appellant posits that the lower Court erred in failing to confirm the October 23, 1975 Arbitrators' Award (in the total sum of $20,000.00), and further erred in permitting the issuance and filing of the "corrected" Arbitrators' Award dated June 25, 1976 (in the total sum of $40,000.00). Appellant contends that the "corrected" Arbitration Award should now be vacated on the basis that (1) the Arbitrators' authority had fully expired following the issuance and transmittal of the October 23, 1974 Award; (2) that the lower court was without authority (or subject matter jurisdiction) when it permitted the original Award to be corrected; (3) that the lower court based its re-submission of the original Arbitration Award on an incorrect standard of evidence; and finally (4) that the procedure used by the Appellees' counsel by personally contacting the Chairman of the Panel of Arbitrators in order to obtain a clarification of said original Award, which contact ultimately led to the Board's filing of the "Corrected Award", was so improper and irregular so as to demand that said "Corrected Award" be voided.

■ It is this court's opinion that Appellant's first three (3) contentions above stated are without merit and, absent the personal telephone communication between Appellees' counsel and Arbitrator Simone following the issuance of the October 3, 1975 Award, the judgment of the lower court would be affirmed. However, because of technically improper conduct on the part of Appellees' counsel in contacting Arbitrator Simone, which direct contact ultimately led to the issuance of the Corrected Award, (which Corrected Award, however, accurately reflected the Arbitration Board's actual, original intentions), we are compelled *sua sponte* to take the extraordinary measure of declaring the entire Arbitration procedure in the instant case *void ab initio* and therefore remanding same to the American Arbitration Association for the purpose of the selection and convention of a new panel of Arbitrators who shall thereafter schedule and then conduct a full and complete hearing as in the first instance.

The *Accident Claims Arbitration Rules* direct:

Section 27. Communication with the Arbitrator: *There shall be no direct communication between parties and the Arbitrator other than at oral hearings. Any other oral or written communication from the parties to the Arbitrator shall be directed to the AAA for transmittal to the Arbitrator.* (Emphasis added) (Appellant's deposition Exhibit 2–A, R. 208a)

At his deposition, Attorney Simone, the Chairman of the three (3) panel Board of Arbitrators recalled:

Let me say this. That if I did sign it, (the October 23rd Award) and I think that I did, I didn't study the document when I signed it, I looked at it and I signed it.

Now after sending that off, *I received* the first notice that I got that there was anything wrong with this award, if it was in fact wrong, *was the telephone call from Mr. Ellis who called me up*; and I didn't really want to discuss the case with him, but I did speak to him, I don't know why he was calling me, but I did say something about your welcome; that I had given it the maximum,

that the panel had given him the award that he was probably looking for. He was a little bit less than grateful, because he said—*he asked me, what was your intention, my intention was to give you 20 apiece,* isn't that what your client got, because I didn't have that thing in front of me, he said no, that's not what they got. *So I said well I'll correct it, as soon as I can.* (Emphasis added) R. 71a–72a.

And finally, as Mr. Simone concluded the direct testimony portion of his depositions, he apparently felt compelled to add:

I would like to state for the record, that since I didn't have a chance to say this. Mr. Ellis is not a personal friend of mine, I don't know him. This is the first case that I've ever been involved, where he has been involved. I've heard his name, and I did not consider that I was doing any kind of service for him. And I only felt that I was doing what the evidence warranted. (R. 73a–74a)

*A Manual for Accident Claims Arbitrators* provides, in relevant part:

2. *Direct Communication with the Parties.* The arbitrator should avoid any communication with the parties or their attorneys, except at the hearings. The obligations of impartiality are especially strong in that the powers of the arbitrator are those of a judge, jury, and appellate court all in one. . . .

3. *How the AAA Helps Insure Impartiality.* When arbitration is administered under AAA Rules, it is not difficult to maintain an ideal standard of conduct. The Association assigns a staff member to handle administrative details, and all physical arrangements for arbitration then proceed through this AAA representative. The practice of communicating only through the Tribunal Clerk enhances the feeling of confidence the parties should have that the decision will be made by one who has not exposed himself to undue pressure from either side. (Appellants deposition Exhibit 1, R. 183a)

Post-Award Procedures

1. *Modification or Clarification.* In most states, the arbitrator's authority is terminated with his rendition of the award. In these jurisdictions, therefore, he may not add to, subtract from, modify, correct, or in any manner explain his award without the mutual consent of the parties who, in writing, have reinstated his authority for those purposes. In the event that an arbitrator receives a telephone call or a letter of inquiry from one of the parties, he should refuse to comment in any way and should refer the matter to the Association for reply. (Emphasis added)  (R. 191a–192a)

Arthur R. Mehr, Regional Director of the AAA, testified that the *Manual* and *Rules* provisions were intended to govern the operation of the instant arbitration proceedings (R. 164a); but there was no way to tell if the three (3) Arbitrators in the instant case were sent copies of the Manual (R. 168a).

Moreover, based on a review of the AAA telephone log by Paul Hamilton, an AAA employee, the AAA knew by October 29, 1975 that two (2) of the three (3) Arbitrators said there was an error in the (October 23, 1975) Award (R. 135a).

■ Despite what appears to be merely an innocent and technical violation of the AAA *Manual* and *Rules*, which precipitated an inquiry by the lower court which ultimately led to the issuance of a Corrected Award, we are compelled *sua sponte* to take the extraordinary measure of declaring the *entire* Arbitration procedure *void ab initio* and therefore remanding same to the AAA for the purpose of the selection and convention of an entire new panel of Arbitrators who shall thereafter schedule and then conduct a full and complete hearing as in the first instance.

We conclude that where there exists even the slightest degree of impropriety in the Arbitration procedure as set forth in the Manual and Rules as exists in the instant case, said Arbitration Proceedings must be set aside and begun anew. When a portion of a quasi-judicial process becomes tainted, the entire procedure must fall.

Accordingly, the entire procedure is remanded to the American Arbitration Association.

PRICE, J., files a dissenting opinion.

VAN der VOORT, J., files a dissenting statement.

JACOBS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

PRICE, Judge, dissenting:

It is interesting to note that with the exception of *Etter v. Edwards*, 4 Watts 63 (1835), appellees' brief does not cite a single Pennsylvania case in support of the action of the court below. The majority then cannot be faulted for noting its result to be an "extraordinary measure of declaring the *entire* Arbitration procedure *void ab initio*" (first emphasis added) without the citation of a single case, Pennsylvania or otherwise.

I submit that the reason for the absence of authority is that the court below erred, and the majority of this Court further compounds the error.

It has long been the law of this Commonwealth that common law arbitration is in a favored position and may only be set aside upon a very limited review. That limited review has placed upon the aggrieved party the burden of showing by clear, precise and indubitable evidence that a fair hearing was denied, or that there was fraud, misconduct, corruption or some other irregularity *of this nature* on the part of the arbitrators which caused an unjust, inequitable or unconscionable award. The arbitrators at common law are the final judges of both law and fact, and their awards may not be disturbed for a mistake of either. *Allstate Insurance Co. v. Fioravanti*, 451 Pa. 108, 299 A.2d 585 (1973); *Harwitz v. Selas Corporation of America*, 406 Pa. 539, 178 A.2d 617 (1962); *Freeman v. Ajax Foundry Products, Inc.*, 398 Pa. 457, 159 A.2d 708 (1960).

Such a policy of limited review is favored and upheld because to do otherwise would destroy the vitality of arbi-

tration as a quick and easy mode of obtaining justice. To broaden the review would invite delay and expense but settle nothing with the finality favored by our law. Arbitration would, if review were broadened, become merely an unnecessary step in the course of litigation. *Westinghouse Air Brake Company Appeal*, 166 Pa.Super. 91, 70 A.2d 681 (1950).

Appellees do not dispute this to be a common law arbitration, and indeed the court below found it to be under common law. Given that state of the record we need not explore further. For the purposes of this case, the arbitration must be construed to be under common law.

I believe the majority, by its opinion, erodes the arbitration system under common law. It is from such little leaks that dams finally collapse.

I would reverse the order of the court below and reinstate the award of the arbitrators dated October 23, 1975.

VAN der VOORT, Judge, dissenting:

I respectfully dissent because I would affirm the corrected award of the Board of Arbitrators.